UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA ex rel. JUNE     :
RAFFINGTON,
                                          :          OPINION AND ORDER
                    Plaintiffs,                      10 Civ. 9650 (RMB) (GWG)
                                          :

        -v.-                              :

                                          :

BON SECOURS HEALTH SYSTEM, INC. et al.,   :

                    Defendants.           :
-----------------------------------------------------------------X
GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

        Relator June Raffington has brought this qui tam action under the False Claims Act

("FCA"), 31 U.S.C. §§ 3729-33, against defendants Bon Secours Health System, Inc. ("Bon

Secours"), Bon Secours New York Health System, and Schervier Long Term Home Health Care

Program ("Schervier") alleging that they submitted false claims to Medicare and the New York

Medicaid program.  See Fifth Amended Complaint, dated Dec. 7, 2015 (Docket # 76) ("FAC"),

¶ 2.  Raffington now moves to amend her complaint for the sixth time.[1]  For the reasons that

follow, her motion is granted in part and denied in part.

---

[1]  Notice of Motion for Leave to File Sixth Amended Complaint, filed Sept. 8, 2017
(Docket # 283); Motion for Leave to File Sixth Amended Complaint and Proposed Order, dated
Sept. 8, 2017 (Docket # 284) ("Leave Mot."); Memorandum of Law in Support of Motion for
Leave to File Sixth Amended Complaint, filed Sept. 8, 2017 (Docket # 285) ("Rel. Mem.");
Defendants' Memorandum of Law in Opposition to Relator's Motion for Leave to File Sixth
Amended Complaint, filed Sept. 29, 2017 (Docket # 288) ("Defs. Opp'n"); Relator's Reply in
Further Support of Motion for Leave to File a Sixth Amended Complaint, filed Oct. 17, 2017
(Docket # 290) ("Rel. Reply").

I. BACKGROUND

    A. Parties' Claims and Defenses in the Fifth Amended Complaint

    In the FAC, the currently operative pleading, Raffington alleges that defendants

"defraud[ed] the Government by knowingly causing Medicaid and Medicare to pay millions of

dollars in false claims for home health services." FAC ¶ 2. Raffington learned of the alleged

fraud while she was employed as Vice-President of Home Care Services at Schervier. Id.

¶¶ 6, 8. The district court granted in part and denied in part the defendants' motion to dismiss

the FAC. See Decision & Order, dated May 24, 2016 (Docket # 99) ("MTD Decision"). The

MTD Decision dismissed certain claims for failure to plead with sufficient particularity as

required by Fed. R. Civ. P. 9(b). See MTD Decision at 20-29. The remaining claims —

"Allegations 1, 2, 3, 4, and 5" and Raffington's retaliation claim — were permitted to remain.

Id. at 9, 29, 31. These allegations are that defendants committed their fraud by (1) "submitting

Medicare and Medicaid claims supported by forged . . . physician signatures on clinical

documentation," FAC ¶¶ 2, 169; (2) "submitting Medicare and Medicaid claims . . . unsupported

by any required clinical documentation" of medical approvals, id.; (3) "providing [the New York

Office of the Medicaid Inspector General] with forged . . . forms during an audit," id. ¶ 59; (4)

"[f]raudulently billing Medicaid without maximizing dual-eligible patients' Medicare coverage,"

id. ¶ 2; and (5) "fraudulently billing Medicaid for amounts exceeding" the "local DSS

[Department of Social Services] budget limitations" and "improperly retain[ing]" payments from

Medicaid," id. ¶¶ 146, 224, 239.[2] The FAC also claimed that defendants unlawfully retaliated

---

    [2] The dismissed claims alleged that defendants committed fraud by (6) "fraudulently misrepresenting patients' medical needs to obtain excessive payments from Medicaid" or "medically unnecessary home health aide services provided to patients eligible only for less expensive personal care aide services," id. ¶¶ 2, 224; (7) "fraudulently enrolling and recertifying

against Raffington "by wrongfully terminating her for attempting to uncover and rectify the Defendants' fraudulent billing practices." Id. ¶ 221.

B.  Procedural History

Raffington filed her original qui tam complaint under seal on December 29, 2010. See Complaint, dated Dec. 29, 2010 (Docket # 22).  The original complaint named eight defendants: the three current defendants, Schervier Nursing Care Center, and four Florida-based subsidiaries of Bon Secours.  Id. at 2.  On March 28, 2014, while the case was still under seal, Raffington filed her first amended complaint, adding six additional defendants: three Virginia defendants — Bon Secours Home Health and Hospice, St. Francis Nursing Care Center, and Bon Secours Maryview Nursing Care Center — and three New York defendants — Bon Secours Charity Health System, Inc. ("Charity Health"), and two of its subsidiaries, Mount Alverno Center, and Schervier Pavilion.  See First Amended Complaint, dated Mar. 28, 2014 (annexed as Ex. B to Defs. Opp'n), ¶¶ 16-21.  The United States and New York State (collectively, the "Government") investigated the allegations in the complaint and stated at a March 2015 conference that they were not inclined to "go forward on those claims" and that they were "taking a no-decision position" on intervening in the case.  See MTD Decision at 1 n.1 (citing Transcript, Mar. 16, 2015, at 4:15-5:14).  On April 21, 2015, the Court unsealed the case.  See Administrative Order, dated Apr. 21, 2015 (Docket # 21).

---

patients for Medicaid's Long Term Home Health Care Program," id. ¶ 2; (8) "misrepresenting patients' Medicare eligibility in order to submit false claims to Medicaid," id.; (9) "misrepresent[ing] the services that patients had received so that Medicare would pay for [home health aide] services that were never delivered," id. ¶ 183; and (10) falsely "upcoding" patients as "suffering from the condition of 'abnormality of gait'" for Medicare payments, id. ¶¶ 2, 198.

Soon thereafter, the Court granted Raffington's motion to file a second amended complaint.  See Order Granting Relator's Motion to File Second Amended Complaint, dated Apr. 27, 2015 (Docket # 23).  The second amended complaint corrected defects in the caption and introductory paragraph of the first amended complaint, and omitted as defendants Charity Health and the three Virginia entities.  See Second Amended Complaint, dated May 5, 2015 (Docket # 27), at ¶¶ 6-15.  Charity Health is the parent entity of Good Samaritan Hospital, whose services include Good Samaritan Home Care Agency ("Good Samaritan"), an entity named in Raffington's proposed Sixth Amended Complaint.  See Sixth Amended Complaint, dated Aug. 29, 2017 (annexed as Ex. 1 to Rel. Mem.) ("SAC"), ¶ 11; see also Defs. Opp'n at 3; Rel. Mem. at 5.

A third amended complaint was filed with consent of the defendants on August 28, 2015. See Third Amended Complaint, dated Aug. 6, 2015 (Docket # 45); Order, dated Aug. 28, 2015 (Docket # 44).  This amendment added factual allegations gleaned from investigations undertaken between the original filing of the complaint in December 2010 and the unsealing of the action in April 2015.  See Rel. Mem. at 3.  After the defendants filed a pre-motion letter to dismiss the third amended complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and failure to plead with the particularity required under Fed. R. Civ. P. 9(b), the Court granted relator an additional opportunity to amend her complaint to cure any deficiencies.  See Transcript, Sept. 22, 2015 (Docket # 60), at 14:12-15:16.  The Court directed Raffington to "specify which defendants did what acts that are violative of what laws."  Id. at 14:13-14. Raffington filed a fourth amended complaint on October 22, 2015.  See Fourth Amended Complaint, dated Oct. 22, 2015 (Docket # 65).  This complaint omitted the Florida defendants

and Schervier Nursing Care Center, retaining claims only against the current three defendants. See id. ¶¶ 6-8.

The parties had begun discovery prior to the filing of the fourth amended complaint, and following initial disclosures and the disclosure to Raffington of documents provided by defendants to the Government, Raffington filed the Fifth Amended Complaint. See FAC; Order, dated Nov. 30, 2015 (Docket # 75). On December 23, 2015, the defendants filed their motion to dismiss, and on May 24, 2016, the Court granted in part and denied in part the motion to dismiss, as explained above. The defendants filed their answer to the complaint on June 21, 2016. Answer, filed June 21, 2016 (Docket # 105). Discovery resumed thereafter and the parties have since exchanged copious documents and engaged in several depositions. See, e.g., Rel. Mem. at 4; Defs. Opp'n at 4-7; Status Report, filed Aug. 4, 2017 (Docket # 272); Status Report, filed Nov. 2, 2016 (Docket # 143).

On September 8, 2017, Raffington filed the instant motion for leave to file a sixth amended complaint. See Leave Mot.; Rel. Mem. Defendants filed their opposition on September 29, 2017. See Defs. Opp'n. Raffington filed her reply on October 17, 2017. See Rel. Reply.

C. Sixth Amended Complaint

The sixth amended complaint removes those claims dismissed by the Court's May 24, 2016 decision and makes a number of stylistic corrections that are not opposed by defendants. See Defs. Opp'n at 1 n.1; Redlined Amendments to Fifth Amended Complaint, filed Sept. 29, 2017 (annexed as Ex. A to Defs. Opp'n); see also SAC. Defendants have challenged the addition of certain new allegations: (1) that Bon Secours is liable for billing improprieties occurring at non-party Good Samaritan, SAC ¶¶ 11-13, 139-41, 173, 175, 177; (2) that the

defendants' billing software "was deliberately programmed not to do split-billing," id. ¶ 141; (3) that defendants' practices were "material" to the Government's decision to pay the defendants' claims, id. ¶¶ 204-07; and (4) that doctors' signatures were forged on Medicare and Medicaid forms, id. ¶¶ 82, 84-87. We discuss each of these below and also address the general arguments defendants have made opposing relator's motion to amend.

## II. GOVERNING LAW

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to file an amended complaint "should be freely given when justice so requires." Under this "permissive standard," Williams v. Citigroup Inc., 659 F.3d 208, 212 (2d Cir. 2011) (per curiam), a court should not deny leave to amend, unless the district court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment" or determines that the proposed amendment would be futile as a matter of law. Foman v. Davis, 371 U.S. 178, 182 (1962); see Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc., 304 F.R.D. 170, 174 (S.D.N.Y. 2014) ("The court may deny leave to amend for 'good reason,' which normally involves an analysis of the factors articulated in Foman: undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party.") (citing McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)); accord Gorman v. Covidien Sales, LLC, 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014); Credit Suisse First Bos., LLC v. Intershop Commc'ns AG, 407 F. Supp. 2d 541, 546 (S.D.N.Y. 2006); Posadas de Mex., S.A. de C.V. v. Dukes, 757 F. Supp. 297, 300 (S.D.N.Y. 1991). While the party seeking to amend its pleading must explain any delay, the party opposing the amendment "bears the burden of showing prejudice, bad faith, and futility of the amendment." Grant v. Citibank (S.D.), N.A., 2010 WL 5187754, at *6

(S.D.N.Y. Dec. 6, 2010) (citing <u>Block v. First Blood Assocs.</u>, 988 F.2d 344, 350 (2d Cir. 1993));

<u>accord</u> <u>Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.</u>, 2015 WL 4097927, at *10 (S.D.N.Y.

July 6, 2015) (citing <u>Allison v. Clos-ette Too, L.L.C.</u>, 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9,

2015) and <u>Ferring B.V. v. Allergan, Inc.</u>, 4 F. Supp. 3d 612, 618 (S.D.N.Y. 2014)).

When a motion "is made after an inordinate delay, no satisfactory explanation is offered

for the delay, and the amendment would prejudice" the non-movant, such "undue delay" should

weigh against granting leave to amend.  <u>Cresswell v. Sullivan & Cromwell</u>, 922 F.2d 60, 72 (2d

Cir. 1990).  "The longer the period of an unexplained delay, the less will be required of the

nonmoving party in terms of a showing of prejudice."  <u>Evans v. Syracuse City Sch. Dist.</u>, 704

F.2d 44, 47 (2d Cir. 1983) (internal quotation marks and citation omitted).  "Mere delay,

however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district

court to deny the right to amend."  <u>State Teachers Ret. Bd. v. Fluor Corp.</u>, 654 F.2d 843, 856 (2d

Cir. 1981) (citing <u>Howey v. United States</u>, 481 F.2d 1187, 1190-91 (9th Cir. 1973) and <u>Middle

Atl. Utils. Co. v. S.M.W. Dev. Co.</u>, 392 F.2d 380, 384 (2d Cir. 1968)).

Before finding prejudice to the non-moving party, courts consider several factors, among

them "whether an amendment would require the opponent to expend significant additional

resources to conduct discovery and prepare for trial or significantly delay the resolution of the

dispute."  <u>Ruotolo v. City of N.Y.</u>, 514 F.3d 184, 192 (2d Cir. 2008) (internal quotation marks

omitted) (quoting <u>Block</u>, 988 F.2d at 350).  In addition, courts will "consider the extent to which

the new claims are related to the existing ones and whether a party has had prior notice of a

proposed new claim."  <u>Refco Grp. Ltd., LLC</u>, 2015 WL 4097927, at *6 (citing <u>Monahan v.

N.Y.C. Dep't of Corrs.</u>, 214 F.3d 275, 284 (2d Cir. 2000), <u>Hanlin v. Mitchel-son</u>, 794 F.2d 834,

841 (2d Cir. 1986), and <u>State Teachers Ret. Bd.</u>, 654 F.2d at 856).  Mere allegations that an

amendment "will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice." Christians of Cal., Inc. v. Clive Christian N.Y., LLP, 2014 WL 3605526, at *5 (S.D.N.Y. July 18, 2014) (internal quotation marks and alterations omitted) (quoting A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000)). Thus, "the fact that the opposing party will have to undertake additional discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." Id. (quoting United States ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi., 889 F.2d 1248, 1255 (2d Cir. 1989)).

Courts assess futility by determining whether the proposed claim could survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See, e.g., Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."); Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000) (citation omitted) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations."). "[I]n ruling on a motion to dismiss, or applying that same standard to determine whether amendment of a complaint would be futile, the Court must 'limit itself to facts state[d] in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.'" Itakura v. Primavera Galleries Inc., 2009 WL 1873530, at *5 (S.D.N.Y. June 30, 2009) (quoting Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996)). The Court must also "accept as true all non-conclusory factual allegations [in the proposed complaint], and draw all reasonable inferences in plaintiff's favor . . . ." Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012) (citation omitted).

III. DISCUSSION

We address next each of the areas of dispute.

A. Good Samaritan Allegations

1. Background

The proposed amendments relating to non-party Good Samaritan seek to hold Bon Secours liable for any false claims submitted by Good Samaritan, a Home Health Agency, as part of its Long Term Home Health Care Program. See SAC ¶¶ 10, 11, 13. The complaint alleges that "[Charity Health] . . . includes Good Samaritan Hospital . . . [whose] services include Good Samaritan Home Care Agency ("Good Samaritan")." Id. ¶ 11. Charity Health was previously a named party in this lawsuit, but was omitted as a defendant by Raffington starting with her second amended complaint. See Defs. Opp'n at 3; Rel. Mem. at 5. According to the proposed amendments, Bon Secours "is a corporate member and owner — with a controlling interest — of [Charity Health]." SAC ¶ 11. Because of its interest in Charity Health, Bon Secours's "Audit and Compliance Committee oversaw Charity and its operations — including Good Samaritan — and Bon Secours appoints and employs every Good Samaritan Hospital chief executive officer and executive vice president." Id. ¶ 12.

The allegations concerning Good Samaritan derive from the installation and use at Bon Secours subsidiaries of a billing system known as "McKesson billing software." Id. ¶¶ 69-70. McKesson, according to the proposed amendments, "from the very start . . . was deliberately programmed not to do split-billing . . . ." Id. ¶ 141 (emphasis in original). "Split-billing," otherwise known as "Medicare maximization," involves "identif[ying] and bill[ing] any liable third party prior to . . . Medicaid." Id. ¶ 136. Billing such parties before billing Medicaid is a requirement of participation in the Medicaid program. See id. ¶ 137. For patients eligible for

9

both Medicare and Medicaid (known as a "dual-eligible patient"), this means billing Medicare before billing Medicaid. Id. ¶¶ 136-37. The impetus for this requirement is that "Medicaid typically reimburses providers for the full cost of a patient's treatment, whereas Medicare reimburses at a flat rate lower than the actual cost of treatment . . . ." Id. ¶ 138. Thus, the Government saves money when a provider bills Medicare first. See id. ¶ 139. If a provider bills Medicaid first for services provided to a dual-eligible patient, it violates the split-billing requirement. Id. ¶ 137.

Bon Secours allegedly "installed . . . McKesson" at Schervier in October 2005. Id. ¶ 69. "[B]y that time, McKesson already had been installed at . . . Good Samaritan . . . ." Id. ¶ 140. "[S]ince the two systems were identical, billing staff at Schervier generally coordinated their billing practices with Good Samaritan staff, and often looked to Good Samaritan for guidance when billing issues arose." Id. Bon Secours officers, including Bon Secours VP Barbara Knott, allegedly "operated and controlled both programs . . . ." Id. Thus, McKesson, by not split-billing, caused Schervier, and allegedly Good Samaritan, to "routine[ly]" submit claims to Medicaid before Medicare in violation of this requirement. Id. ¶¶ 139, 142, 173. The complaint details three examples of such improper billing at Schervier during 2007 and 2008. Id. ¶¶ 142-57. No examples of improper billing at Good Samaritan are included in the proposed SAC.

Bon Secours objects on grounds of futility, undue prejudice, and undue delay to the inclusion of the proposed Good Samaritan allegations, and thus any claim by relator that Bon Secours may be held liable for Good Samaritan's conduct.[5] It contends that the proposed

---

[5] Non-party Westchester Medical Center ("WMC") has filed a letter arguing that the SAC will harm their reputation and prejudice them by opening them to discovery. See Letter from Westchester Medical Center, dated Oct. 19, 2017 (attached to Letter from Rena Andoh, dated Oct. 19, 2017 (Docket # 291)). Because we are denying the motion to amend insofar as it

amendments are futile for four reasons: (1) because Bon Secours does not control Good

Samaritan such that it can be held liable for Good Samaritan's conduct under the "alter ego"

doctrine, commonly referred to as "piercing the corporate veil," see Defs. Opp'n at 12; (2)

because the claims regarding Good Samaritan could not survive a challenge under Rule 9(b), id.

at 16; (3) because the allegations are time-barred, id. at 19; and (4) because the allegations are

barred by the FCA's seal requirement, id. at 20. Inasmuch as we agree with Bon Secours's first

argument for futility and find that it would be unduly prejudiced by including these allegations,

it is unnecessary to address the remaining futility arguments.

We note that Raffington argues that the Good Samaritan allegations do not constitute

new causes of action and thus that any futility argument, insofar as it applies Rule 12(b)(6) to the

new allegations, is therefore inapplicable. See Rel. Mem. at 14. She cites no case law for this

argument and we find none. It would be one thing if the new allegations merely added

additional factual support for an existing claim. Here, however, we view the new allegations

regarding Good Samaritan as supporting an essentially new claim: namely, that Bon Secours

caused Good Samaritan to submit false claims to the Government and that Bon Secours must

now be liable for those false claims. The allegedly false claims submitted by Good Samaritan

were not previously part of the complaint. We believe Bon Secours could move to dismiss just

this aspect of Raffington's False Claims Act claim were the SAC filed. Thus we conclude that

we may properly assess whether the allegations regarding Good Samaritan could withstand a

---

relates to Good Samaritan, it is unnecessary to determine if WMC has standing to be heard on
these arguments. Compare Martins v. Cty. of Nassau, 2017 WL 1458770, at *3-4 (E.D.N.Y.
Apr. 24, 2017) (considering argument from non-party as to motion to amend), with Copantitla v.
Fiskardo Estiatorio, Inc., 2010 WL 1327921, at *4 (S.D.N.Y. Apr. 5, 2010) (refusing to do so)
(citing Vasquez v. Summit Women's Ctr., Inc., 2001 WL 34150397, at *1 n.1 (D. Conn. Nov.
16, 2001)).

motion to dismiss.

2. Analysis

"The Second Circuit's common law standard [for veil-piercing] is taken directly from New York law." Lakah v. UBS AG, 996 F. Supp. 2d 250, 260 (S.D.N.Y. 2014) (citing cases); see generally MAG Portfolio Consult., GMBH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 63 (2d Cir. 2001) (citing New York law for veil-piercing analysis in case arising under Federal Arbitration Act); Thomson-CSF, S.A. v. Am. Arb. Ass'n, 64 F.3d 773, 777 (2d Cir. 1995) (citing cases applying New York law for veil-piercing analysis in case arising under Federal Arbitration Act).

In New York, "piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." In re Morris v. N.Y. State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141 (1993) (citations omitted); accord TNS Holdings, Inc. v. MKI Sec. Corp., 92 N.Y.2d 335, 339 (1998); Tap Holdings, LLC v. Orix Fin. Corp., 109 A.D.3d 167, 174 (1st Dep't 2013); Cobalt Partners, L.P. v. GSC Capital Corp., 97 A.D.3d 35, 40 (1st Dep't 2012). Proving these elements has been characterized as a "heavy burden." TNS Holdings, Inc., 92 N.Y.2d at 339; accord DirecTV Latin Am., LLC v. Park 610, LLC, 691 F. Supp. 2d 405, 432 (S.D.N.Y. 2010).

Importantly, "[a] party seeking application of the alter ego doctrine must come forward with factual allegations as to both elements." Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 197 (E.D.N.Y. 2009) (citations, internal quotation marks, and brackets omitted); EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005). "Allegations concerning the domination element are subject to the basic pleading

standard of Rule 8.  Allegations concerning the fraud or wrongful act element are subject to the

heightened pleading standard of Rule 9(b) to the extent that they allege fraud."  <u>Bravado Int'l</u>

<u>Grp. Merch. Servs.</u>, 655 F. Supp. 2d at 197 (quoting <u>Fed. Nat'l Mortg. Assoc. v. Olympia Mortg.</u>

<u>Corp.</u>, 2006 WL 2802092, at *7 (E.D.N.Y. Sept. 28, 2006)).

Here, the proposed amendments fail to adequately plead that Bon Secours "exercised

complete domination" of Good Samaritan.[6]  To determine whether a corporate parent dominates

its subsidiary, courts consider a number of factors, including:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3)
> intermingling of funds; (4) overlap in ownership, officers, directors, and
> personnel; (5) common office space, address and telephone numbers of corporate
> entities; (6) the degree of discretion shown by the allegedly dominated
> corporation; (7) whether the dealings between the entities are at arms length; (8)
> whether the corporations are treated as independent profit centers; (9) payment or
> guarantee of the corporation's debts by the dominating entity, and (10)
> intermingling of property between the entities.

<u>MAG Portfolio</u>, 268 F.3d at 63 (quoting <u>Freeman v. Complex Computing Co.</u>, 119 F.3d 1044,

1053 (2d Cir. 1997)); <u>accord</u> <u>Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.</u>, 39 F. Supp.

3d 516, 524-25 (S.D.N.Y. 2014).

Raffington's proposed amendments do not adequately plead facts that would allow Bon

Secours to be held liabile for claims submitted by Good Samaritan.  Raffington contends that the

SAC sufficiently pleads domination because the SAC alleges that "[Bon Secours] owned,

---

[6]  The parties address whether the proposed amendments properly allege corporate veil
piercing only with respect to Good Samaritan.  <u>See</u> Defs. Opp'n at 12-16; Rel. Reply at 6-7.  We
note, however, that proving claims against Bon Secours would in fact require piercing the
corporate veil of two or possibly three entities: first, Good Samaritan, then its alleged parent,
Good Samaritan Hospital, and last, Charity Health.  <u>See</u> <u>generally</u> <u>In re Tronox, Inc.</u>, 855 F.3d
84, 106 n.27 (2d Cir. 2017) (citations omitted) (plaintiff needed "two veil-piercings" to hold
ultimate parent liable).  At each level, Raffington would need to establish a prima facie case for
veil-piercing.  <u>See</u> <u>id.</u>

operated, and exercised significant control over Good Samaritan . . . [and it] names specific [Bon Secours] executives . . . who created, implemented and oversaw Defendants' split-billing fraud." Rel. Reply at 7 (citing SAC ¶¶ 11-14, 139-41, 159, 163, 166-77). An allegation of "significant control," however, is insufficient for veil-piercing. Where a party seeks to hold a parent liable for the actions of its subsidiary, as Raffington does here, New York law — and thus federal common law — requires that "the intervention by the parent in the management of the subsidiary must be to such an extent that the subsidiary's paraphernalia of incorporation, directors and officers are completely ignored." Beck v. Consol. Rail Corp., 394 F. Supp. 2d 632, 638 (S.D.N.Y. 2005) (internal quotation marks omitted) (quoting Billy v. Consol. Mach. Tool Corp., 51 N.Y.2d 152, 163 (1980)). The SAC does not contain such allegations as to Bon Secours's control of Good Samaritan. The closest it comes are allegations that "Bon Secours' Audit and Compliance Committee oversaw Charity [Health] and its operations — including Good Samaritan — and Bon Secours appoints and employs every Good Samaritan Hospital chief executive office and executive vice president." SAC ¶ 12. This allegation is inadequate most obviously because neither Charity Health nor "Good Samaritan Hospital" are the entities over which Raffington alleges Bon Secours exercises complete domination — rather, it is Good Samaritan (that is, the Good Samaritan Home Care Agency). See id. ¶ 11. Thus, the SAC fails to show domination.

Additionally, Raffington cites no case law (and we are aware of none) that an allegation that a parent "oversaw" a subsidiary suffices for a finding of "complete domination." As was explained in Sheridan Broadcasting Corp. v. Small, 19 A.D.3d 331 (1st Dep't 2005), "[a]n inference of abuse does not arise . . . where a corporation was formed for legal purposes or is engaged in legitimate business." Id. at 332 (citing TNS Holdings, 92 N.Y.2d at 339-40). For

example, the SAC also does not allege "common office space, address and telephone numbers," or "overlap in ownership, officers, directors, and personnel," or the "intermingling of funds"; nor does it speak to "the degree of discretion shown by the allegedly dominated entity." MAG Portfolio, 268 F.3d at 63. Thus, even drawing all reasonable inferences in favor of Raffington as is required on a motion to dismiss, see Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 140 (2d Cir. 1991), the SAC fails to show domination and therefore fails to state a prima facie case for piercing the corporate veil. Analysis of the second prong is therefore unnecessary. Because the SAC's allegations as to Good Samaritan would fail to survive a motion to dismiss, it is futile and thus Raffington's motion to add the proposed allegations relating to Good Samaritan, see SAC ¶¶ 11-13, 139-41, 166, 168-69, 173, 175, 177, must be denied.

Finally, we would in any event deny the motion to amend to add the Good Samaritan allegations on the basis of prejudice. The addition of allegations regarding the practices of Good Samaritan would significantly expand discovery. The Second Circuit has recognized that "[o]ne of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action." Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998) (internal quotation marks omitted) (quoting H.L. Hayden Co. v. Siemens Med. Sys., 112 F.R.D. 417, 419 (S.D.N.Y. 1986)). While we recognize that, when faced with the potential for additional discovery, an extension of the discovery period is in many cases appropriate and that prejudice may not exist where the discovery period has not concluded and no motions for summary judgment have been filed, the instant case is not of that character. Here, the relator is seeking to move to amend for the sixth time, the electronic and document discovery phase of the case was extraordinarily lengthy and contentious, and that

phase is virtually concluded.  See, e.g., Document Sec. Sys., Inc. v. Adler Techs., Inc., 2008 WL

596879, at *8 (W.D.N.Y. Feb. 29, 2008) (denying leave to amend because, inter alia, "[t]he

proposed amendments at issue are not technical or corrective in nature and neither do they

simply add additional theories based on facts already plead.  Instead, they represent dramatic and

substantive amendments that would significantly delay this case, drastically change the course of

this litigation and require the devotion of enormous additional resources to complete discovery

and take the case to trial."); accord Themis Capital, LLC v. Dem. Rep. Congo, 2013 WL

1687198, at *5 (S.D.N.Y. Apr. 18, 2013) ("In light of the fact that this case has been long

pending, that discovery has generously been extended, that defendants' admissions and conduct

of this litigation led plaintiffs (and the Court) to conclude that [the new allegations were not] at

issue, and the likely cost and delays that permitting defendants' proposed amended answer

would likely yield, the Court denies defendants' motion [for leave to amend]."); see also H.L.

Hayden Co., 112 F.R.D. at 419 (collecting cases where leave to amend denied because it would

delay resolution of the case).

      B.  Split-Billing Allegation

      As noted previously, the proposed amendments include an allegation concerning

defendants' split-billing practices.  Specifically, the SAC seeks to allege that the "McKesson

system . . . was deliberately programmed not to do split-billing . . . ."  SAC ¶ 141 (emphasis in

original).  The defendants contend that this proposed allegation transforms what was previously

an allegation that defendants knowingly failed to split-bill Medicare and Medicaid into an

allegation that the defendants operated "a billing system in a manner that prevented 'split-

billing.'"  Defs. Opp'n at 27 (emphasis in original).  We question whether defendants can

properly seek to prevent the addition of a single allegation where it does not result in the addition

of a new claim.  In any event, we reject defendants' argument because the FAC had already alleged "that Schervier had programmed the billing software so that it did not even allow for split-billing."  FAC ¶ 109; see also id. ¶ 111 (describing result of "Schervier's intentional or reckless failure to program its software for split-billing").  The new allegation does not depart materially from the previous allegation.

The defendants argue that this allegation has already been "conclusively debunked by evidence already produced . . . which relator has unreasonably delayed testing, analyzing or verifying."  Defs. Opp'n at 24.  This argument fails, however, because denying the truth of an allegation in a proposed pleading is not a basis for opposing leave to amend.  See, e.g., Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006) (citations omitted) (In considering a motion for leave to amend, the court must "accept as true all of the proposed complaint's factual allegations, and draw all reasonable inferences in favor of plaintiff . . . .").

Defendants also argue that further discovery on this issue would unduly prejudice them.  Id. at 28.  But, as defendants' argument impliedly concedes, they have been on notice of this allegation since the filing of the FAC.  The proposed amendment, SAC ¶ 141, only substitutes "the McKesson system" for "billing software" and adds the word "deliberately" to a sentence that already implied as much.  Compare SAC ¶ 141 ("McKesson system . . . was deliberately programmed not to do split-billing . . . .") with FAC ¶ 109 ("Schervier had programmed the billing software so that it did not even allow for split-billing.").  We do not see how the changes could materially alter the scope of discovery.  Thus, defendants have not carried their burden of showing that the modified split-billing allegation, SAC ¶ 141, will require the expenditure of significant additional resources on discovery or significantly delay the proceedings.  We thus

grant Raffington leave to amend the complaint to add paragraph 141, except to the extent it seeks to add claims regarding Good Samaritan.

C. <u>Materiality Allegations</u>

In response to the Supreme Court's decision in <u>Univ. Health Servs., Inc. v. United States ex rel. Escobar</u>, 136 S. Ct. 1989, 1995 (2016), the proposed SAC adds several allegations alleging that "Defendants' false claims for Government funds were 'material' under the federal and New York False Claims Acts, as Defendants' misrepresentations had the natural tendency to influence the Governments' payment decisions." SAC ¶ 204. The material misrepresentations allegedly made involved the required submission of Form 1500s with each claim submitted to Medicare. <u>Id.</u> ¶ 205. Form 1500, according to the proposed amended allegations, must be filed with each claim for "physician services." <u>Id.</u> ¶ 27. The Forms demand specific information, including: "dates of service; appropriate billing codes for the service(s) – called Current Procedural Terminology . . . codes; and the rendering provider's National Provider Identifier number . . . and signature." <u>Id.</u> ¶ 28. By signing the Form, "providers certify 'that services shown on [the Form 1500] were medically indicated and necessary for the health of the patient and were personally furnished by [the provider] or were furnished incident to [his/her] professional service by [his/her] employee under [his/her] immediate personal supervision.'" <u>Id.</u> ¶ 29 (quoting Form 1500 Instructions) (brackets in original). Because "the Form provides that, 'No Part B Medicare Benefits may be paid unless this form is received as required by existing law and regulations (42 CFR 424.32),'" the claim alleged by the proposed amendments is that submitting Form 1500 is material to the Government's decision to pay claims. <u>Id.</u> ¶ 205.

The defendants' response to these allegations is essentially that they are not true. They note that the allegation is based on the use of Form 1500, which defendants' brief states that

defendants "did not use." Defs. Opp'n at 29. The support for this statement is not contained in the proposed SAC but rather in a prior filing by defendants. See id.

We reject defendants' argument because "futility" in the context of a motion to amend requires a court to assume the truth of allegations contained in the proposed pleading. See, e.g., Max Impact, LLC v. Sherwood Grp., Inc., 2012 WL 3831535, at *2 (S.D.N.Y. Aug. 16, 2012) ("In assessing the claimed futility of a proposed amended pleading, the court must assume the truth of the factual allegations set forth in the proposed amended pleading.") (citations omitted); accord DiPace v. Goord, 308 F. Supp. 2d 274, 278 (S.D.N.Y. 2004) (citations omitted) ("Normally, a motion to amend is adjudicated without resort to any outside evidence.").

Defendants also appear to argue that the materiality allegations are legally insufficient even if the allegations of the complaint are accepted as true. Id. at 30. But their argument on this point, id., is confusing. They assert only that certain other allegations of the complaint "argue against" a finding of materiality. Id. (giving as an example an allegation that "the government audited Defendants' split-billing practices"). But defendants fail to explain why it matters that some inferences might be drawn in defendants' favor given that we are required to draw "all reasonable inferences in favor of the plaintiff." Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt., 843 F.3d 561, 566 (2d Cir. 2016). Thus, we will not deny the relator leave to include allegations regarding materiality.

D. Forgery Allegations

The amended complaint alleges that in 2006 Dr. Joseph Scarpa, then the Medical Director of Schervier Nursing Care, a non-party, "regularly forged physicians' signatures on meeting attendance lists; and that . . . Dr. Scarpa forged [a physician's] signature on prescriptions that had been improperly filled out by nurses working at Schervier Nursing Care

Center."  SAC ¶ 82.  The SAC also alleges that the "defendants" forged the signature of Dr.

Deborah Friedlander on "multiple 485 Forms, for multiple patients, over the course of multiple

years," id. ¶ 84, and names specific dates for three specific patients, id. ¶¶ 85-87.

The defendants argue these allegations should be struck under Rule 12(f), which provides

that "the court may strike from a pleading an insufficient defense or any redundant, immaterial,

impertinent, or scandalous matter."  See Defs. Opp'n at 31-32.  "An allegation is 'impertinent' or

'immaterial' when it is neither responsive nor relevant to the issues involved in the action."

Anderson v. Davis Polk & Wardwell LLP, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012) (quoting 2

James Wm. Moore et al., Moore's Federal Practice ¶ 12.37[3] (3d ed. 2010)).  "Scandalous

generally refers to any allegation that unnecessarily reflects on the moral character of an

individual or states anything in repulsive language that detracts from the dignity of the court."

Id. (citation and internal quotation marks omitted).

Defendants argue that the allegations about Dr. Scarpa's conduct while at Schervier

Nursing Care Center are immaterial because they do not relate to false claims submitted to the

Government, and would be "scandalous and highly embarrassing" for Dr. Scarpa.  Id. at 32.

Defendants also contend these allegations are "redundant of the forgery claims already included

in the operative complaint," and therefore serve no practical purpose.  Id.  Raffington's reply

brief notes that the allegations "corroborate with particularity [her] assertion that Defendants'

forgery scheme pre-dated her employment with defendants, continued during her employment,

and involved physicians whom Defendants did not identify."  Rel. Reply at 10.  She also

contends that the allegations "demonstrate a pattern and practice among Defendants of forging

physicians' signatures when true signatures are unavailable."  Id.

A motion to strike "on the ground that the matter is impertinent and immaterial" should

not be granted, "unless it can be shown that no evidence in support of the allegation would be admissible."  Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976) (citations omitted).  In general, "courts should not tamper with the pleadings unless there is a strong reason for so doing."  Id. at 893; accord Slue v. N.Y. Univ. Med. Ctr., 409 F. Supp. 2d 349, 374 (S.D.N.Y. 2006) ("[m]otions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute") (quoting Zinaman v. USTS N.Y. Inc., 798 F. Supp. 128, 135 (S.D.N.Y. 1992)).

Defendants have not met the high standard for granting a motion to strike.  The proposed allegations regarding Dr. Friedlander's signature, SAC ¶¶ 84-87, relate to the claim that defendant Schervier submitted multiple Form 485s with forged signatures in violation of Medicare regulations.  See id. ¶ 68.  The Court already denied a motion to dismiss these forgery claims as they relate to the years 2008-2009.  See MTD Decision at 9.  The new allegations relate to forgeries from 2007-2009, see SAC ¶¶ 85-86, and thus are not "immaterial."  Also, they do not "unnecessarily" reflect on the moral character of an individual or use repulsive language.

While not as clear cut, we similarly find the allegations relating to Dr. Scarpa's conduct at Schervier Nursing Care Center, see id. ¶ 82, should not be struck because the factual matters alleged might potentially be admissible at trial to show the defendants' practices with regard to the forging of doctors' signatures.

Defendants further argue that the "allegations would be time-barred."  Defs. Opp'n at 32. Statutes of limitations, however, are applied to claims, not to "allegations."  The Court does not read the allegations as setting forth new claims from a particular time period but rather as alleging conduct by defendants that support the claims already present in this case.  Thus, we will not order the striking of any "allegations" on the ground that they are barred by a statute of

limitations.

E.  Allegations Based on Information Gleaned from Fact Discovery

Defendants also make a sweeping argument that the motion to amend must be denied as to "[m]ost of Relator's proposed amendments . . . because they allege fraud based on information learned in fact discovery, rather than on Relator's personal knowledge . . . ."  Defs. Opp'n at 33.   Certainly, as defendants point out, a party who cannot meet the pleading requirements of Rule 9(b) is not entitled to discovery in order to flesh out the missing elements.  See Defs. Opp'n at 34 (citing Jordon v. N.Y. Mercantile Exch., 571 F. Supp. 1530, 1543 n.5 (S.D.N.Y. 1983), rev'd on other grounds, 735 F.2d 653 (2d Cir. 1984)); accord Wood ex rel. United States v. Applied Research Assocs., Inc., 328 F. App'x 744, 747 (2d Cir. 2009) (summary order) (One purpose of Rule 9(b) "is to discourage the filing of complaints as a pretext for discovery of unknown wrongs.") (internal quotations marks omitted) (quoting Madonna v. United States, 878 F.2d 62, 66 (2d Cir. 1989)).

But this principle is a far cry from the notion that a party may never use information obtained in discovery to supplement a complaint that otherwise passes muster under Rule 9(b).  The only case cited by defendants to support this argument, Bingham v. HCA, Inc., 2016 WL 6027115 (S.D. Fla. Oct. 14, 2016), is not on point.  In Bingham, the court made clear that without the allegations obtained during discovery, the complaint could not have survived a motion to dismiss.  See Bingham, 2016 WL 6027115, at *4 (without information gleaned from discovery, complaint was "so threadbare as to warrant dismissal").  Here by contrast, the operative complaint has already survived a motion to dismiss.  Moreover, we note that case law has allowed the supplementation of proper allegations of violations of the False Claims Act with information obtained during discovery.  See United States ex rel. Galmines v. Novartis Pharm.

22

Corp., 88 F. Supp. 3d 447, 451 (E.D. Pa. 2015) (granting leave to amend and noting that "it would make little sense not to allow a relator to obtain these details [about the start and end date of a fraud] during discovery and amend her complaint accordingly.") (emphasis added); see also Ohman v. Kahn, 685 F. Supp. 1302, 1308 n.3 (S.D.N.Y. 1988) ("Because some of the allegations currently satisfy rule 9(b), this case is clearly going to proceed through discovery. If plaintiffs cannot be more specific now concerning these materials, they might be able to do so at the end of discovery. At that time, the Court would entertain a motion to amend the complaint to include any misrepresentations or omissions unearthed during discovery."); see generally Capitol Records v. MP3 Tunes, LLC, 2009 WL 3364036, at *10 (S.D.N.Y. Oct. 16, 2009) (granting leave to amend and finding no undue delay in raising the new claims, in part, "[b]ecause [the new claims'] factual predicate emerged during discovery.").

F.  Undue Delay as to Filing of Motion

Defendants make a brief argument that the entire motion to amend should be denied because Raffington "unreasonably delayed in filing it." Defs. Opp'n at 34. In their view, Raffington has been aware since before she filed this lawsuit of "many of the allegations" insofar as they are based on emails that were "copied" to Raffington at the time she worked at Schervier years ago. Id. Defendants do not cite to specific allegations and do not provide any evidence to support their claim that Raffington actually recalled the material in the emails and deliberately waited to make the allegations they are apparently referring to. In the absence of any detail as to what allegations are at issue or any support for their argument, the argument is rejected. Of course, it would likely be rejected anyway because "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." State Teachers Ret. Bd., 654 F.2d at 856. Obviously, having failed to point to the allegations at

issue, defendants have failed to point to the specific prejudice that resulted from including any particular allegation or set of allegations.

IV. CONCLUSION

For the reasons stated above, Raffington's motion for leave to amend (Docket ## 283 and 284) is granted in part and denied in part. A pleading consistent with this Opinion and Order shall be filed forthwith.

SO ORDERED.

Dated: January 25, 2018
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge