UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNITED STATES OF AMERICA ex rel. JUNE                 :
RAFFINGTON,
                                                      :       <u>OPINION AND ORDER</u>
                        Plaintiff,
                                                      :       10 Civ. 9650 (RMB) (GWG)
        -v.-
                                                      :


BON SECOURS HEALTH SYSTEM, INC. et al.,               :

                        Defendants.                   :
---------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Relator June Raffington ("Relator") has brought this <u>qui</u> <u>tam</u> action under the False

Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, against defendants Bon Secours Health System,

Inc., Bon Secours New York Health System, and Schervier Long Term Home Health Care

Program alleging that they submitted false claims to Medicare and the New York Medicaid

program.  <u>See</u> Sixth Amended Complaint, filed February 1, 2018 (Docket # 296) ("6AC"), ¶¶ 1-

2.

        Relator now seeks leave to amend her complaint for a seventh time under either Fed. R.

Civ. P. 15(a) or 15(b).[1]  For the following reasons, Relator's motion is granted in part and denied

in part.

---

[1] Notice of Motion, filed May 7, 2021 (Docket # 539); Memorandum of Law in Support,
filed May 7, 2021 (Docket # 540) ("Rel. Mem."); Memorandum of Law in Opposition, filed May
21, 2021 (Docket # 548) ("Def. Mem."); Declaration of David Fischer in Opposition, filed May
21, 2021 (Docket # 549); Reply Memorandum of Law in Support, filed May 28, 2021 (Docket
# 551) ("Rel. Reply").

I. <u>BACKGROUND</u>

    A. <u>The First Six Complaints</u>

Relator filed her original <u>qui</u> <u>tam</u> complaint under seal on December 29, 2010. <u>See</u>
Complaint, dated December 29, 2010 (Docket # 22). The United States and New York State
investigated the allegations in the complaint for over four years but did not intervene. <u>See</u>
Decision & Order, filed May 24, 2016 (Docket # 99) ("MTD Decision"), at 1 n.1 (citing March
16, 2015 Transcript, filed April 13, 2016 (Docket # 92), at 4-5). On April 21, 2015, the Court
unsealed the case. <u>See</u> Administrative Order, filed April 21, 2015 (Docket # 21).

Relator filed a number of amended complaints after the unsealing. <u>See</u> Second Amended
Complaint, filed May 5, 2015 (Docket # 27); Third Amended Complaint, dated August 6, 2015
(Docket # 45); Fourth Amended Complaint, filed October 22, 2015 (Docket # 65); Fifth
Amended Complaint, filed December 7, 2015 (Docket # 76) ("5AC"). On December 23, 2015,
the defendants filed a motion to dismiss the 5AC, <u>see</u> Notice of Motion (Docket # 81), and on
May 24, 2016, the Court granted in part and denied in part the motion. <u>See</u> MTD Decision. The
MTD Decision dismissed certain claims for failure to plead with sufficient particularity as
required by Fed. R. Civ. P. 9(b). <u>See</u> MTD Decision at 20-29. The remaining claims and
Relator's retaliation claim proceeded. <u>Id.</u> at 9, 29, 31.

On January 25, 2018, this Court granted in part Relator's motion to file the 6AC. <u>See</u>
Opinion and Order, filed January 25, 2018 (Docket # 295). The 6AC alleged that

> Defendants have perpetrated a widespread, systematic and ongoing scheme to
> defraud the Government by knowingly causing Medicaid and Medicare to pay
> millions of dollars in false claims for home health services, including by:
>
> > • *Submitting Medicare and Medicaid Claims Supported by Forged or*
> > *Missing Physician Signatures on Clinical Documentation or*
> > *Unsupported by Any Required Clinical Documentation, including*
> > *"485 Forms" and "OASIS Forms";*

> • *Fraudulently Billing Medicaid Without Maximizing Dual-Eligible*
> *Patients' Medicare Coverage; and*
> • *Fraudulently Billing Medicaid for Services to Patients Not Approved*
> *by the Relevant Local Departments of Social Services.*

6AC ¶ 2 (emphasis in original).

    B. <u>Defendants' Motion for Summary Judgment on Materiality</u>

Defendants initially moved to dismiss that complaint on the ground that it failed to allege materiality, but acceded to the Court's request that their materiality arguments be raised in the context of a summary judgment motion rather than a motion to dismiss, given that discovery was complete and that materiality was the sole issue raised in the motion to dismiss.  <u>See</u> Order, filed September 13, 2018 (Docket # 375); Order, filed September 18, 2018 (Docket # 378). Defendants then filed for summary judgment based solely on the issue of materiality, and the Court granted their motion in part and denied it in part.  <u>See</u> Opinion and Order, filed September 13, 2019 (Docket # 452) ("SJ Decision").

One of the issues that defendants moved for summary judgment on was "that a forged or missing signature on a CMS 'Form 485,' or 'plan of care form,' would not have been material to the Government's decision to pay claims associated with that form."  SJ Decision at 34-35. Relator responded to this argument by arguing that "'physician authorization' is material to the Government's payment decision," <u>id.</u> at 35, and defendants replied, "that the complaint does not in fact make any allegations of a lack of physician authorization," <u>id.</u> at 36.  The Court did not "reach the question of whether a claim of a lack of physician authorization is stated in the complaint," instead assuming <u>arguendo</u> "that a physician authorized any services for which a claim was made but that this authorization was not properly documented."  <u>Id.</u>  With this assumption, the Court found that "there is insufficient evidence for a jury to find that, in situations where a physician had actually authorized the services at issue, [the New York State

Department of Health] would find it material to its payment decision that the form seeking

payment did not contain a proper signature of the physician — either because the signature had

been written by someone else or because it was missing entirely." Id. at 41.

Relator filed a motion for reconsideration and clarification on September 27, 2019. See

Notice of Motion (Docket # 456). Her motion asked that this Court "clarify that, under its Order,

Relator may pursue a claim for Defendants' actions in billing Medicare/Medicaid for home

health aide services rendered without proper physician authorization." Relator's Motion Seeking

Clarification, filed September 27, 2019 (Docket # 457), at 2. The Court denied that motion after

oral argument on December 11, 2019. See Order, filed December 11, 2019 (Docket # 463). At

oral argument, the Court stated that

> I very carefully did not end my summary judgment decision with saying the false
> claims relating to the Form [4]85s are dismissed because I knew this was an issue
> out there and I had already said I wasn't deciding the question of whether the
> complaint included those claims.

Transcript of December 11, 2019 Proceedings, filed December 30, 2019 (Docket # 465) ("Dec.

11 Tr."), at 4. The Court denied Relator's motion for reconsideration because it was "not the

right vehicle" for answering Relator's question, namely whether "the submission of forms where

there was no authorization by a doctor is . . . part of the false claims that [Relator is] alleging

here." Id. The Court and the parties discussed "what the proper motion is" for deciding this

issue. Id. Defendants position at the time was that "probably the most efficient way to handle

this is just to move on to the liability summary judgment phase." Id. at 5. Defendants' counsel

represented that

> [T]he bottom line is we're going to move on whatever remains of what used to be
> the 485 claim. I'm not even exactly sure what to call it anymore. We can call it
> physician authorization, whatever it is that we're going to title it. We're going to
> go ahead and go move on the remainder of it whatever it is that's left. And in
> opposition — and this time instead of just moving on a theory, we're going to
> move in the entire claim, and they're going to come back and they're going to put

in all their evidence to demonstrate there's a material issue of fact and that they've got evidence that can support this physician authorization theory.  And in reply, we will come back and demonstrate that they don't.

Id. at 6.  The Court raised its view that

[T]here's two questions that would have to be answered . . . we need a vehicle for determining whether [the physician authorization claim]'s in the case or not.  And then the second thing is if it's not in the case, should they be allowed to amend and would there be any prejudice to you on the theory that, you know, all discovery's been done anyway.

Id. at 7.  Defendants' counsel replied that they still believed a summary judgment motion would

be the most efficient vehicle, because

[E]ven in [the] context of a summary judgment motion, we can still argue that the claims that they're proposing to take to trial are so far outside the scope of the complaint that, what is it, 15(b), the amending — you know, the conforming the pleadings to the proof concept shouldn't actually be applied.  Having said that, Your Honor, I have to admit that even if we weren't allowed to raise that issue in summary judgment, given the amount of time that this case has been pending, I think our preference would be to skip [the] clarification motion and just move into summary judgment.

Id. at 9.  The Court and parties then discussed if expert discovery should take place before the

contemplated motion for summary judgment.  It was ultimately determined that Relator would

proceed to make her expert disclosures prior to the motion, with defendants intending to inform

Relator whether "we intend to submit rebuttal reports" within two weeks of Relator's disclosure

of her expert reports.  Id. at 42.

      C.  Relator's Expert Reports and Defendants' Motion to Preclude

The case proceeded to expert discovery, and Relator submitted three expert reports to

defendants on June 23, 2020.  Letter from Inayat Hemani, filed August 3, 2020 (Docket # 475),

at 1.  In response to those disclosures, defendants announced their intention to file a motion to

exclude portions of two of those reports, as one raised "new allegations and new theories of

liability outside the scope of Relator's Sixth Amended Complaint," while the other included

"new fact discovery" after discovery had closed.  Letter from Rena Andoh, filed August 12, 2020 (Docket # 478), at 1.  Defendants specifically challenged one of the reports, by Jessica Schmor, as "introduc[ing] entirely new theories of liability based on newly alleged documentation deficiencies never before described or mentioned in any iteration of her complaint, most importantly the 6AC, and never probed in any part of fact discovery."  Id. at 3.  Schmor's report purported to analyze defendants' billing records and identify indicia of fraud showing that the claims were submitted "without proper authorization" by a physician.  Declaration of David T. Fischer in Support, filed September 4, 2020 (Docket # 488), Exh. 4, at 11.

The defendants filed their motion to preclude the expert reports, see Notice of Motion, filed September 4, 2020 (Docket # 484), and the Court held oral argument on the motion on March 10, 2021, and on March 29, 2021.  See Transcript of Proceedings on March 10, 2021, filed March 11, 2021 (Docket # 507) ("March 10 Tr."); Transcript of Proceedings on March 29, 2021, filed March 31, 2021 (Docket # 523) ("March 29 Tr.").

At oral argument, defendants' attorney agreed that their objection to Schmor's report was "one of relevance," stating that "there's a question as to what the current scope of the case is and whether the [Schmor] affidavit fits into it."  March 10 Tr. at 6.  The Court asked defense counsel if "with respect to the plaintiff's ability to pursue their claims regarding 485 forms that are forged . . .  it is your contention that in order to pursue those claims that [Relator] must also show a lack of authorization?"  Id. at 11.  Defense counsel replied that "based on what [Relator] pled in the complaint . . . there are no forged signature allegations that would remain in the case that weren't disposed of by the materiality summary judgment decision."  Id. at 12.  The Court asked defense counsel "if [Relator] find[s] a forged signature claim and show[s] that there was no physician authorization for that, is that a claim in the case?"  March 10 Tr. at 13.  Defense

counsel asserted "that it would not be at this point, given what is actually pled and the standard of [Fed. R. Civ. P.] 9(b). . . . there is a fundamental issue with respect to whether or not [Relator] place[d] us on notice of those claims."  <u>Id.</u> at 14.

After hearing argument on the scope of Relator's complaint, the Court eventually ruled that paragraphs 71 through 108 of the 6AC did not "put anyone on notice . . . that the claim there was anything other than a pure claim about forged signatures.  It has nothing to do with whether they were backed up . . . with an actual physician oral authorization or anything else."  <u>Id.</u> at 34.

At the second oral argument, on March 29, 2021, the Court considered the remaining allegations in Relator's complaint related to this issue, contained in paragraphs 109 through 125 of the 6AC.  The Court found that "this is a claim that the defendant submitted claims with certifications that were not supported by 485 forms."  March 29 Tr. at 60.  The Court found that "the defendants were on notice that there was a complaint about nursing visits, and a very specific complaint that clerical staff were filling out forms that these nursing visits had taken place when, in fact, the nursing visit or assessment had not taken place."  <u>Id.</u> at 61.  The Court found that "this particular language" did not put "the defendant on notice that physician approvals are at issue," but allowed that the Relator "could move to amend the complaint to make that clear."  <u>Id.</u> at 62.  The Court thus found that Schmor's report "as currently constituted is not relevant," and that "the plaintiff either needs to move to amend or to file a new report."  <u>Id.</u> at 77.  This motion to amend followed.

D.  <u>The Proposed Seventh Amended Complaint</u>

Relator's proposed seventh amended complaint reframes Relator's allegations as follows:

Defendants have perpetrated a widespread, systematic and ongoing scheme to defraud the Government by knowingly causing Medicaid and Medicare to pay millions of dollars in false claims for home health services, including by:

> • *Submitting Medicare and Medicaid claims for services rendered to patients that were not timely authorized by a physician;*
> • *Submitting Medicare and Medicaid claims for services rendered to patients that were not supported by a nurse's medical assessment; and*
> • *Fraudulently Billing Medicaid for Services to Patients Not Approved by the Relevant Local Departments of Social Services.*

Seventh Amended Complaint, annexed as Exh. C to Rel. Mem. ("7AC"), ¶ 2 (emphasis in original). Relator characterizes the 7AC as a document that "clarifies Relator's allegations that Defendants billed the Government for services where they lacked timely physician authorization." Rel. Mem. at 1. Relator further notes that the proposed complaint "removes the Medicare Maximization allegations, adds allegations regarding the materiality of physician authorization, and makes other minor changes." Id. at 1 n.1.

Relator argues that leave to amend should be granted either under Fed. R. Civ. P. 15(a) or 15(b). See Rel. Mem. at 7, 14.

## II. DISCUSSION

### A. Leave to Amend under Rule 15(a)

Fed. R. Civ. P. 15(a)(2) provides that a court "should freely give leave [to amend] when justice so requires." The policy behind this rule is that "[l]iberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit." Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc., 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990) (citing JennAir Prods. v. Penn Ventilator, Inc., 283 F. Supp. 591, 594 (E.D. Pa. 1968)). The decision to grant or deny leave to amend under Rule 15(a)(2) is within the trial court's discretion. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971). A court may deny leave to amend for "good reason," which normally involves an analysis of the four factors articulated in Foman v. Davis, 371 U.S. 178, 182 (1962): undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party. See McCarthy

v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Foman, 371 U.S. at 182).

"The burden to explain a delay is on the party that seeks leave to amend." MacDraw, Inc. v. CIT

Grp. Equip. Fin., Inc., 157 F.3d 956, 962 (2d Cir. 1998).  Under Rule 15(a)(2), the "non-movant

bears the burden of showing prejudice, bad faith and futility of the amendment." Grant v.

Citibank (S.D.), N.A., 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010).  The Second Circuit

has held that an amendment prejudices a non-moving party when, among other things, "the

assertion of the new claim or defense would (i) require the opponent to expend significant

additional resources to conduct discovery and prepare for trial [or] (ii) significantly delay the

resolution of the dispute." Monahan v. N.Y.C. Dep't of Corrs., 214 F.3d 275, 284 (2d Cir. 2000)

(punctuation omitted).

When a motion "is made after an inordinate delay, no satisfactory explanation is offered

for the delay, and the amendment would prejudice" the non-movant, such undue delay should

weigh against granting leave to amend.  Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d

Cir. 1990).  "The longer period of an unexplained delay, the less will be required of the

nonmoving party in terms of a showing of prejudice." Evans v. Syracuse City Sch. Dist., 704

F.2d 44, 47 (2d Cir. 1983) (punctuation omitted).  "Mere delay, however, absent a showing of

bad faith or undue prejudice, does not provide a basis for a district court to deny the right to

amend." State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).

Before finding prejudice to the non-moving party, courts consider several factors, among

them "whether an amendment would require the opponent to expend significant additional

resources to conduct discovery and prepare for trial or significantly delay the resolution of the

dispute." Ruotolo v. City of N.Y., 514 F.3d 184, 192 (2d Cir. 2008) (punctuation omitted).  In

addition, courts will "consider the extent to which the new claims are related to the existing ones

and whether a party has had prior notice of a proposed new claim." Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P., 2015 WL 4097927, at *6 (S.D.N.Y. July 6, 2015) (citing Monahan, 214 F.3d at 284, Hanlin v. Mitchelson, 794 F.2d 834, 841 (2d Cir. 1986), and State Teachers Ret. Bd., 654 F.2d at 856). Normally, mere allegations that an amendment "will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice" Christians of Cal., Inc. v. Clive Christian N.Y., LLP, 2014 WL 3605526, at *5 (S.D.N.Y. July 18, 2014) ( (punctuation omitted). However, the prejudice calculus changes when the motion to amend is made following the conclusion of discovery and the amendment would require the re-opening of discovery. See, e.g., Shi Ming Chen v. Hunan Manor Enter., Inc., 437 F. Supp. 3d 361, 366 (S.D.N.Y. 2020) ("Courts in this circuit routinely hold that motions to amend are untimely when filed after the close of discovery.") (citing cases, punctuation omitted); Bromfield v. Bronx Lebanon Special Care Ctr., Inc., 2019 WL 1873156, at *3 (S.D.N.Y. Apr. 26, 2019) (denying motion to amend and add new defendant after discovery had closed where "proposed amendment would require the reopening of discovery . . . and the re-deposition of plaintiff, the individual defendants and perhaps other witnesses as well").

Courts assess futility by determining whether the proposed claim could survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See, e.g., Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."); Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations.").

Relator argues that the "need to amend did not arise until the Court's March 29, 2021 ruling, which held for the first time that Relator's Complaint did not include a claim of lack of

authorization," and thus there has been no undue delay, since "Relator has promptly moved to amend her complaint."  Rel. Mem. at 7-8.  She argues that no prejudice will result to defendants "because the Parties have already taken discovery on the facts relevant to Relator's theory," id. at 10-11, and that defendants cannot claim "in good faith that further discovery is necessary," having argued at the December 11, 2019, conference that "the case should proceed to summary judgment because they would be ready to move on the entirety of Relator's claims, including lack of authorization." Id. at 11 (citing Dec. 11 Tr. at 6).  Relator further argues that even if further discovery were needed, "that does not constitute undue prejudice," as such discovery "would be minimal."  Id. at 11-12.  She argues that defendants had notice of "the theory of lack of authorization," and that defendants conceded such notice previously.  Id. at 12.  Relator further claims that the amendment is not futile "because physician authorization is material to the Government's decision to pay for services."  Id. at 13.

Defendants oppose the motion, arguing that Relator unduly delayed, that the amendment "would result in severe and irreparable prejudice," and that the amendment is futile, because it "could not survive a motion to dismiss, would violate the FCA's seal requirement, and [is] barred by the FCA's statute of limitations."  Def. Mem. at 10.

### 1. Undue Delay

As to delay, this is an unusual case because Relator asserts that she had no desire to amend her complaint except for the fact that this Court issued a ruling as to the scope of her pleading that alerted her to the need for the amendment.

To give the background: Relator first made explicit to the defendants and the Court that she was asserting a lack of authorization as part of her claim regarding "forged or missing signatures" during the course of briefing of the summary judgment motion.  See Defendants'

Reply to Relator's Opposition to Defendants' Motion for Summary Judgment, filed November 14, 2018 (Docket # 413), at 29-30. In issuing its decision on that motion, the Court declined to reach the question of whether the complaint contained a physician authorization claim. See United States ex rel. Raffington v. Bon Secours Health System, Inc., 405 F. Supp. 3d 549, 572 (S.D.N.Y. 2019). Following that decision, Relator promptly sought to obtain a ruling on whether the complaint contained an authorization claim by filing a motion for reconsideration and clarification. Relator's Motion for Clarification, filed September 27, 2019 (Docket # 457), at 2. At the December 11, 2019, oral argument on that motion, the Court suggested that Relator might need to amend her complaint in order to raise her physician authorization claim. Dec. 11 Tr. at 7. In response, the defendants asserted that they preferred to "just move into summary judgment," that they would accept the scope of claims as set forth in Relator's motion for reconsideration and that they would "demonstrate why those claims are not viable in" their "opening" summary judgment brief. Id. at 9. Defendants then changed course when the question of whether there was an "authorization claim" in the case was raised by the Relator's disclosure of Schmor's expert report. At that point, defendants attacked her report on the ground that it was relevant only if the physician authorization claim was part of the case. Memorandum of Law in Support, filed September 4, 2020 (Docket # 485), at 16-18. The Court agreed with defendants that the majority of the report was irrelevant because it related only to physician authorization, which was not part of the 6AC, but at the same time granted the Relator permission to move to amend the complaint. Order, filed March 29, 2021 (Docket # 522).

This case is thus an unusual one for purposes of assessing delay. In the usual case, a court will focus on when the moving party "bec[ame] aware" of the new information sought to be added to the complaint, Amusement Indus., Inc. v. Stern, 2014 WL 4460393, at *10

(S.D.N.Y. Sept. 11, 2014), so that it can be determined if the movant "waited" an improper amount of time before seeking leave to amend, id.  Here, by contrast, Relator acted with alacrity once the Court made clear that the existing claims in this case were not what she purportedly thought them to be.

The question thus becomes whether Relator engaged in "undue delay" simply by virtue of drafting a complaint that, as the Court has already ruled, could not reasonably have been read to include a claim of lack of physician authorization.  March 29 Tr. at 61.  In the end, we find Relator is not responsible for the period after she first sought to amend the complaint through her motion for reconsideration in September 2019.  But she should be held responsible for the period of delay from the time of the unsealing of the complaint in April 2015 until that motion for reconsideration.  While we do not doubt Relator's assertion that she in fact believed that the lack-of-authorization claim was included in the complaint, the test must be an objective one. See, e.g., Kader v. Sarepta Therapeutics, Inc., 887 F.3d 48, 61 (1st Cir. 2018) (affirming district court finding of undue delay on plaintiffs' part in FCA case, writing that the plaintiffs' "arguments to the contrary focus on their subjective belief in the strength of the [complaint]" and were thus unavailing).  Because Relator offers "no satisfactory explanation . . . for the delay" between 2015 and 2019, Cresswell, 922 F.2d at 72 — the period in which discovery took place — we find that this factor weighs against Relator.

## 2. Prejudice

While defendants assert that they will be prejudiced by being forced to conduct discovery on any lack-of-authorization claim, they previously took the position that no further discovery was necessary for the Court to adjudicate such a claim:

> the bottom line is we're going to move on whatever remains of what used to be the 485 claim. . . .  We can call it physician authorization . . .  and this time

13

> instead of just moving on a theory, we're going to move in the entire claim, and they're going to come back and they're going to put in all their evidence to demonstrate there's a material issue of fact and that they've got evidence that can support this physician authorization theory.  And in reply, we will come back and demonstrate that they don't.

Dec. 11 Tr. at 6.

Even now, defendants give no details as to what discovery they "would need to take"; instead, they simply assert that further discovery would be necessary.  Def. Mem. at 17.  But defendants do not identify a single individual who would need to be deposed.  They do not say whether Relator has any relevant documents or whether documents are in the hands of nonparties.  They do not identify the nature of these documents.  In light of the fact that it is defendants' burden to show prejudice, see Grant, 2010 WL 5187754, at *6, we cannot find that their conclusory assertions satisfy their burden on this score, see Christians of Cal., 2014 WL 3605526, at *5.

     3.  Futility

Defendants argue that the proposed amendments would be futile for several reasons.  First, they argue that Relator "failed to allege all of the elements of an FCA violation and failed to plead them with particularity."  Def. Mem. at 18.  Specifically, they argue that Relator failed to plead with particularity the materiality element of an FCA claim.  Id. at 18-19.  They also argue that Relator fails to adequately plead scienter — in other words, "that the Defendants acted 'knowingly.'"  Id. at 19.  They address each of Relator's revised allegations separately.  Finally, they argue that the claims are either time-barred or barred by the FCA's sealing requirement.  Id. at 26-28.  We treat the physician authorization claim and the nurses' assessment claim separately.

a.  <u>The Physician Authorization Claim</u>

i.  <u>Materiality</u>

Defendants argue that this claim is futile because the 7AC "has not pled that an untimely authorization would have been material to the government's decision to pay Schervier's claims." Def. Mem. at 20.  They argue that Relator has failed to even "include any allegations regarding any regulations or government guidance regarding the significance of <u>timely</u> authorizations," and that the materials relied upon by Relator "do not relate to <u>timely</u> authorization" and were already addressed by this Court in the SJ Decision.  <u>Id.</u> at 20-21 (emphasis in original).  Relator responds by arguing that they have included allegations demonstrating materiality, including the materiality of timely authorization.  <u>See</u> Rel. Reply at 8-9 (pointing to ¶¶ 31, 160, 165, 167, and 168 of the 7AC).

The first paragraph pointed to by Relator cites a regulation requiring timely certification of a plan of care.  <u>See</u> 7AC ¶ 31 (citing 42 C.F.R. § 424.22(a)(2)).  The Sixth Circuit has held "that the timing requirement in 42 C.F.R. § 424.22(a)(2) is an express condition of payment. Thus, this factor weighs in favor of the conclusion that a misrepresentation with respect to this requirement is material."  <u>United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.</u>, 892 F.3d 822, 833 (6th Cir. 2018).  The Relator cited to this case in her opening memorandum, <u>see</u> Rel. Mem. at 13, but defendants make no attempt to address or distinguish it. The Court in <u>Prather</u> concluded that the Relator had alleged materiality because "[t]he timing requirement in 42 C.F.R. § 424.22(a)(2) is an express condition of payment," which, in combination with allegations that "the government paid the claims submitted by the defendants without knowledge of the non-compliance," and after finding that "§ 424.22(a)(2) is a mechanism of fraud prevention," sufficed to allege materiality.  <u>Prather</u>, 892 F.3d at 836-37.  We

agree with <u>Prather</u> that the regulation makes timely authorization an express condition of payment, though, as noted by the Supreme Court, "not every undisclosed violation of an express condition of payment automatically triggers liability." <u>Universal Health Servs., Inc. v. United States ex rel. Escobar</u>, 136 S. Ct. 1989, 2001 (2016).

Relator has also alleged that different government agencies have previously identified untimely certifications as "risk areas that were areas of special concern" that "have been the frequent subject of administrative recoveries, as well as investigations and prosecutions under the civil False Claims Act." 7AC ¶ 160 (punctuation omitted); <u>see also</u> <u>id.</u> ¶ 165 (noting that New York agency had emphasized "ensuring that all orders for services provided to patients signed by an appropriate ordering practitioner within required timeframes") (punctuation omitted); ¶ 167 (noting that Department of Health and Human Services audit had recommended refunding untimely claims to government); ¶ 168 (noting that New York state audit identified overpayments based on "signatures of the authorizing practitioners that were not obtained within the required time period"). Thus, defendants are simply incorrect when they argue that Relator has not included allegations that relate to "<u>timely</u> authorization." Def. Mem. at 21 (emphasis in original). In fact, Relator has made allegations that governmental agencies have focused on the issue of timely certifications and have recommended rejecting payment where there are untimely authorizations. We are of course examining the sufficiency of a pleading rather than evidence submitted in support of a motion for summary judgment. In light of this fact, we find that the allegations in the 7AC are sufficient to allege materiality with regard to timely physician authorization.

ii.  <u>Scienter</u>

Defendants argue that Relator has failed to allege scienter, claiming that the "sole allegation relating to scienter is that 'Schervier knew that it was fraudulent to submit Medicare/Medicaid claims without timely physician authorization.'"  <u>Id.</u> (quoting 7AC ¶ 79). Relator responds by arguing that Judge Berman, in his decision on the motion to dismiss the Fifth Amended Complaint, "previously found that Relator's allegations of scienter were sufficient," and thus his decision is "the law of the case."  Rel. Reply at 6.  The Court agrees. "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  <u>DiLaura v. Power Auth. of State of N.Y.</u>, 982 F.2d 73, 76 (2d Cir. 1992) (punctuation omitted).  Judge Berman has already ruled that the scienter allegations found in previous versions of the complaint were sufficient.  <u>See</u> MTD Decision at 10, 12.  The fact that Relator's theory of liability has changed does not alter his conclusion.  Even if we did not consider ourselves bound by Judge Berman's decision, we would conclude that the scienter allegations are sufficient. Relator's allegation that she was replaced by another employee after she discovered the problematic authorizations demonstrates defendants' knowing behavior.  <u>See</u> 7AC ¶¶ 122-27. Thus, the Court concludes that Relator has made out the scienter element of this claim.

iii.  <u>Particularity under Fed. R Civ. P. 9(b)</u>

Defendants argue that "Relator cannot just casually swap in 'authorization' for 'forgery' and assert, without any particularity, that the previously alleged conduct also supports her vastly new allegations."  Def. Mem. at 22.  But "Relators may satisfy Rule 9(b) by providing sufficient identifying information about those false claims, or by providing example false claims that enable the defendant to identify similar claims."  <u>United States v. Mount Sinai Hosp.</u>, 2015 WL

7076092, at *5 (S.D.N.Y. Nov. 9, 2015) (punctuation omitted).  Here, defendants' argument does not appear to be that Relator's examples are insufficiently particular, but that, because she used those examples to advance a prior theory of liability, she cannot now use the same examples to advance her new theory of liability.  The Court sees no particular bar to repeating prior allegations in this fashion.  Defendants repeatedly cite to the Court's summary judgment ruling on materiality as demonstrating that Relator's new theory of liability is futile, see Def. Mem. at 22, 23.  But the Court's summary judgment ruling did not address Relator's new theory, and we do not see how its reasoning can be imported from the summary judgment context to a futility analysis, which is evaluated by standards applicable to a motion to dismiss.  The Court's prior ruling looked at Relator's evidence; this opinion looks only to Relator's allegations.  Here, Relator's allegations are sufficiently particular to withstand a Rule 9(b) challenge.  As Judge Berman concluded in his opinion denying defendants' motion to dismiss: "Relator also pleads the submission of false (forged) claims to the government with a high degree of particularity, including patient names, date range of services, and billing amounts submitted to Medicaid." MTD Decision at 10.  Those same allegations are made here.  Thus, the Court rejects defendants' argument as to a lack of particularity.

b. The Nurses' Assessment Claim

Defendants' argue that adding this claim is futile because the Relator cannot show "that Schervier's failure to perform a nurse's medical assessment would have been material to the government's a decision to pay the claims."  Def. Mem. at 25.  Defendants also argue that Relator fails to plead scienter with regard to this allegation.  Id. at 26.

The Court has already ruled that this theory of liability was present in the prior complaint. See March 29 Tr. at 61 ("I think the defendants were on notice that there was a complaint about

nursing visits, and a very specific complaint that clerical staff were filling out forms that these nursing visits had taken place when, in fact, the nursing visit or assessment had not taken place. So I would sense that that is a claim."). Indeed, Relator's claim concerning nurses' assessments has been present in the case since her very first complaint was filed under seal. See Complaint, dated December 29, 2010 (Docket # 22), ¶¶ 70-71 ("In order to bill patient services to Medicaid and Medicare, providers must reassess their patients every sixty days. This reassessment requires that a registered nurse physically examine a patient . . . Schervier had been submitting recertification forms to the Government without the required nurses' visits or physician approvals."). Relator's amendments to this claim do not alter this conclusion; they simply clarify the claim's presence in the case.

As for defendants' arguments on the issues of materiality and scienter, the Court declines to consider such arguments here for several reasons. First, as noted above, Relator is not adding a new claim to the case with these allegations, but simply clarifying one that already exists in her pleading. Thus, considering defendants' arguments on this matter would amount to giving them an unwarranted opportunity to attempt to dismiss such claims long after the time to move for dismissal has passed. Moreover, the consideration of the "futility" of a proposed amendment to a pleading is one of "discretion." Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000). Here, defendants' arguments amount to barely a page's worth of material, see Def. Mem. at 25-26, and Relator devotes nearly no space to rebutting those sparse arguments in her reply, see Rel. Reply at 11. In this case, the Court deems it more appropriate for the arguments regarding the merits of the nurses' assessment claim to be made in a motion addressed to the substance of the claim and with the benefit of the full briefing that a motion on the merits provides.

       c. <u>Whether the Claims Are Time-Barred or Barred by the FCA's Seal Requirement</u>

Defendants argue that the new allegations are time-barred because they allege misconduct before 2015 (when defendants ceased operating the home care program at issue) and the FCA has a six-year statute of limitations.  Def. Mem. at 26.  They assert that the claims cannot relate back to the filing of the original complaint in 2010 because 1) they do not arise from the "same nucleus of operative facts as an earlier complaint," and 2) the FCA's provision regarding sealing prevents relation back.  <u>Id.</u> at 26-27.

Under Rule 15(c) of the Federal Rules of Civil Procedure, "[a]n amendment to a pleading relates back to the date of the original pleading when" the claim in the amendment "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  As the Second Circuit has explained, "the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading. . . .  Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs."  <u>Slayton v. Am. Exp. Co.</u>, 460 F.3d 215, 228 (2d Cir. 2006) (punctuation omitted).  Here, as the Court has already ruled, the facts alleged in the 6AC addressed exclusively forged and missing signatures.  March 10 Tr. at 34; March 29 Tr. at 62. While the Relator has sought to amend the complaint to substitute words such as "timely authorized" for "forged," <u>see</u>, <u>e.g.</u>, 7AC ¶¶ 2, 67, this substitution reflects a complete sea change in the material factual allegations underlying this claim.  It is one thing to allege that defendants' staff were forging signatures of physicians on a Form 485.  But to allege that the physicians had never even authorized the services to begin with is to assert an entirely new set of operative facts. Thus, the claims in the 7AC arise out of "conduct," or a "transaction" or "occurrence" that is

completely different from the factual allegations of the 6AC. Fed. R. Civ. P. 15(c)(1)(B). This

is not a situation where the Relator proposes to make prior allegations more "definite and

precise," but rather she seeks to add new allegations of a completely different character and

arising from a completely different "fact situation" from what had previously been alleged.

Slayton, 460 F.3d at 228.[2] Put another way, the allegations of the original complaint did not put

defendants on "notice" that they needed to investigate the issue of physician authorization.

Stevelman v. Alias Research Inc., 174 F.3d 79, 86 (2d Cir. 1999). Thus, the proposed

amendment regarding physician authorization is futile because it does not relate back and is thus

time-barred.

Even if we had found that the claim arose out of the same conduct, transaction, or

occurrence so as to allow relation back under Fed. R. Civ. P. 15(c)(1)(B), some of the claims

asserted would nevertheless be untimely due to the incompatibility of the FCA's sealing

provisions with Rule 15(c)'s core requirement of notice. The Second Circuit in U.S. v. The

Baylor Univ. Med. Ctr., 469 F.3d 263, 270 (2d Cir. 2006), expounded at length on this issue:

> "The rationale of Rule 15(c) is that a party who has been notified of litigation
> concerning a particular occurrence has been given all the notice that statutes of
> limitations were intended to provide." Baldwin County Welcome Ctr. v. Brown,
> 466 U.S. 147, 159 n. 3 (1984). By design, the seal provision of § 3730(b)
> deprives the defendant in an FCA suit of the notice usually given by a complaint.
> Because any relation back of subsequent filings to the original complaint is
> incompatible with the core requirement of notice under Rule 15(c)(2), continued
> running of the statute of limitations is warranted.

---

[2] Plaintiffs points to a passage from defendants' brief as reflecting an "admi[ssion]" that
the new allegations arise from the same facts as the old allegations. Rel. Reply at 13-14. We
cannot find this oddly worded portion of the defendants' brief to constitute an admission,
however, when defendants clearly take a different position elsewhere in their brief. See Def.
Mem. at 11 n.4 ("Relator's proposed 7AC would effectively allege an entirely different form of
conduct."); id. at 27-28 (arguing that the 7AC contains "new allegations" and do not "arise from
the same operative facts as prior pleadings").

Id.  The Court in Baylor emphasized that the "secrecy required by § 3730(b) is incompatible with Rule 15(c)(2), because (as is well-settled) the touchstone for relation back pursuant to Rule 15(c)(2) is notice."  Id.  While, as Relator points out, Baylor addressed only "the specific situation where the Government files an independent complaint to intervene in an FCA action," not "amended complaints filed by a relator," Rel. Reply at 15, the reasoning of Baylor plainly applies to her complaint.  See Hayes v. Dep't of Educ. of City of New York, 20 F. Supp. 3d 438, 449 (S.D.N.Y. 2014) ("Baylor consequently states a proposition that endures: the Second Circuit said unambiguously in that case that Rule 15(c)(1)(B) relation back is simply unavailable in suits brought pursuant to § 3730(b)'s procedural requirements.").

Relator also points out that Baylor's specific holding was abrogated by statute after the FCA was amended to allow relation back of the government's pleadings, and thus questions any reliance upon it.  Rel. Reply at 15-16.  But Congress's amendment to the FCA does not demonstrate that Baylor's reasoning was incorrect — if anything, it suggests the opposite.  By amending the FCA to provide relation back only for government pleadings, Congress demonstrated an awareness of the tension between the FCA's sealing requirement and Rule 15's notice requirements.  It chose to relax the relation back standard for governmental pleadings — but not for a relator's pleadings.  Relator critiques this new regime as a "bizarre 'double standard,'" see Rel. Reply at 16 (quoting dictum in United States ex rel. Kolchinsky v. Moody's Corp., 162 F. Supp. 3d 186, 199 (S.D.N.Y. 2016)), but the Court's role is not to question the reasoning behind Congressional action but rather to apply the statute as Congress enacts it.  Accord United States v. McKesson Corp., 2019 WL 438357, at *12 (E.D.N.Y. Feb. 4, 2019) (citing Baylor for finding no relation back of amendment under Fed. R. Civ. P. 15(c)(1)(C)), reconsideration denied, 2019 WL 2717104 (E.D.N.Y. June 28, 2019); United States

ex rel. Hussain v. CDM Smith, Inc., 2017 WL 4326523, at *10-11 (S.D.N.Y. Sept. 27, 2017)

("[Relator] next appears to argue that the retaliation claim should relate back to the original

sealed complaint, which was filed within the statute of limitations. . . .   The wrinkle presented by

FCA qui tam cases is that the original complaint is filed under seal — meaning the defendant has

no notice of the claims against it. . . .   The result here is the same as in Hayes."); Hayes, 20 F.

Supp. 3d at 448 (citing Baylor for the proposition that "it is simply not permissible for amended

pleadings to relate back to original complaints filed under seal pursuant to § 3730(b)(2)"); In re

Pharm. Indus. Average Wholesale Price Litig., 498 F. Supp. 2d 389, 401 (D. Mass. 2007) ("For

the reasons explained in Baylor, there is no relation back under Fed. R. Civ. P. 15(c)(2) because

no notice was given of the complaint.").   Thus, Relator's new allegations cannot relate back to

her original, timely complaint, and instead could only relate back to, at the earliest, the date that

defendants received notice of the action, which in this case would presumably be April 21, 2015,

when the case was unsealed.   See Administrative Order (Docket # 21).   Defendants appear to

concede this point.   See Def. Mem. at 27 ("the proposed 7AC cannot, as a matter of law, relate

back to any of Relator's complaints . . . that were filed before the seal was lifted in this case in

April 2015"); see also Hussain, 2017 WL 4326523, at *10 (contemplating relation back of

proposed amendment to date of complaint filed after unsealing, but concluding that such relation

back would be futile regardless because the statute of limitations had already run by that date).

Accordingly, any allegations in Relator's complaint that address conduct prior to 6 years before

that date (i.e., any allegations about conduct prior to April 21, 2009) would be time-barred.   Not

all of the allegations in her proposed complaint would fail because of this, see, e.g., 7AC ¶ 79b-c,

but some would, see, e.g., id. ¶¶ 79a, 79d-e , 81a-c, 86.   The allegations that would remain timely

if they related back to the unsealing date are nonetheless barred because they do not satisfy Rule 15(c)(1)(B)'s standard, as discussed above.

Relator also argues that the FCA itself "is a source of relation back" under Fed. R. Civ. P. 15(c)(1)(A), Rel. Reply at 16, which allows for relation back where "the law that provides the applicable statute of limitations allows relation back." But as one case has noted, the "FCA includes an explicit relation-back provision for pleadings by the Government. See 31 U.S.C. § 3731(c). In light of that provision, most courts agree that relators cannot rely on Rule 15(c)(1)(A)." United States ex rel. Wood v. Allergan, Inc., 246 F. Supp. 3d 772, 803 n.20 (S.D.N.Y. 2017), rev'd and remanded on other grounds, 899 F.3d 163 (2d Cir. 2018); accord Hayes, 20 F. Supp. 3d at 449 ("the FCA now explicitly permits a form of relation back under Rule 15(c)(1)(A) that unmistakably benefits only the Government and not relators") (emphasis in original); U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc., 608 F.3d 871, 883 (D.C. Cir. 2010) (Relator "may not take advantage of the relation back provision in the FCA, which applies only to the Government's pleadings."). The cases cited by Relator in support of her argument, see Rel. Reply at 16, were all decided prior to Congress's amendment of the FCA in May of 2009 which added the relation-back provision. The Court agrees with the analysis in Hayes, which found that the "FCA taken as a whole can no longer fairly be read to provide implicit support for Rule 15(c)(1)(A) relation back for the claims of relators." 20 F. Supp. 3d at 449-50.

*   *   *

In sum, Relator's proposed physician authorization claim would not relate back to Relator's original complaint, because as we have already concluded, it was not "actually pleaded" in the prior versions of Relator's complaint. Id. at 445; accord Wood, 246 F. Supp. 3d at 804 (allowing relation back of amendment because "it asserts the same claims as the original

complaint and differs only insofar as it expands and modifies the facts alleged in the earlier

pleading"). Thus, the proposed amendment to add this claim would be futile. The same cannot

be said for the restructured nurses' assessments claim, which we found to be present in prior

versions of the complaint. <u>See</u> Complaint ¶¶ 70-71.

Finally, as for defendants' contention that any new allegations we permit "would be

subject to dismissal based on its violation of the seal requirement," Def. Mem. at 28, the Court

rejects this argument as unsupported by case law. As the Court noted when the defendants

previously made this argument,

> The only case cited by defendants to support this argument, <u>Bingham v. HCA, Inc.</u>, 2016 WL 6027115 (S.D. Fla. Oct. 14, 2016), is not on point. In <u>Bingham</u>, the court made clear that without the allegations obtained during discovery, the complaint could not have survived a motion to dismiss. <u>See Bingham</u>, 2016 WL 6027115, at *4 (without information gleaned from discovery, complaint was "so threadbare as to warrant dismissal"). Here by contrast, the operative complaint has already survived a motion to dismiss. Moreover, we note that case law has allowed the supplementation of proper allegations of violations of the False Claims Act with information obtained during discovery.

<u>Raffington</u>, 285 F. Supp. 3d at 774-75 (collecting cases). To the extent defendants are arguing

that the sealing requirement categorically bars amended complaints not filed under seal, we

reject this argument. "In recent years, district courts have generally agreed, finding that when an

amended complaint makes similar allegations of fraud, resealing is not required." <u>Kolchinsky</u>,

162 F. Supp. 3d at 198 (collecting cases). Because Relator's proposed amendments as to nursing

assessments are mere "variations on a theme," resealing is not required, and thus they are not

futile for this reason. <u>Id.</u>

B. <u>Whether Leave Should be Granted under Rule 15(b)</u>

Relator seemingly argues that Rule 15(b) would allow for amendment even where Rule

15(a) would not. Rel. Mem. at 14-17. While Fed. R. Civ. P. 15(b) states that it applies to

"amendments during and after trial," Relator contends that it can and should be applied here to allow her proposed amendment.  See Rel. Mem. at 14-17.  Rule 15(b) provides:

> (1)  Based on an Objection at Trial.  If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended.  The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits.  The court may grant a continuance to enable the objecting party to meet the evidence.

> (2)  For Issues Tried by Consent.  When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.  A party may move — at any time, even after judgment — to amend the pleadings to conform them to the evidence and to raise an unpleaded issue."

There is of course no "trial" here and no issues are being "tried" on consent or otherwise. Nonetheless, courts have applied Rule 15(b) during the summary judgment phase of a case. See Myers v. Moore, 326 F.R.D. 50, 61 n.7 (S.D.N.Y. 2018) (collecting cases).  And Relator apparently relies on this principle in invoking Rule 15(b) now.  We will put to one side the question of whether Rule 15(b) applies when there is not in fact a pending motion for summary judgment as is the case here.  Case law reflects that the Rule 15(b) standard presents two questions that the Court must consider: "whether the new issues were tried by the parties' express or implied consent and whether the defendant would be prejudiced by the implied amendment."  Royal Am. Managers, Inc. v. IRC Holding Corp., 885 F.2d 1011, 1017 (2d Cir. 1989).  "Because the unpled issue must have been tried by the parties' express or implied consent, courts commonly do not reach the issue of prejudice where the party opposing amendment has not consented to litigate the unpled issue."  Myers, 326 F.R.D. at 61 (punctuation omitted, quoting Luria Bros. & Co., Inc. v. Alliance Assur. Co., Ltd., 780 F.2d 1082, 1089 (2d Cir. 1986)).  "[T]he crucial test is whether the parties have consented to litigation of the issue; it must have been tried by their express or implied consent."  Luria Bros., 780 F.2d at 1089.

Here, there has plainly been no express consent to "try" or otherwise adjudicate the physician authorization claim.  While consent "may be implied from the opposing party's failure to object to the admission of evidence relevant to the unpleaded issue," Silverstein v. Penguin Putnam, Inc., 522 F. Supp. 2d 579, 604 (S.D.N.Y. 2007) (citing Luria Bros, 780 F.2d at 1089), that situation does not apply here either.  First, no evidence is being offered on the current motion and what evidence has been proffered in this case (in the form of Relator's expert reports on liability) has been strenuously objected to by defendants as reflected in their motion to preclude.  See Notice of Motion, filed September 4, 2020 (Docket # 484).  Thus, Rule 15(b) does not apply.

In any event, courts consider futility of amendment in considering an application for leave to amend under Rule 15(b).  See, e.g., MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 157 F.3d 956, 962 (2d Cir. 1998) (affirming denial of 15(b) motion where "the proposed reassertion of a breach of contract claim would have been futile").  Thus, the proposed amendment to add the physician authorization theory would be denied regardless of defendants' consent to litigate the issue.  Our analysis is thus unchanged whether Relator's motion is considered under Fed. R. Civ. P. 15(a) or 15(b).

\*       \*       \*

To summarize our ruling: the Court finds that Relator has engaged in some undue delay and that defendants have not shown that they would suffer undue prejudice from Relator's proposed amendment.  But the proposed amendment adding a new theory of FCA liability based on a lack of timely physician authorization would be futile because it does not relate back to the original complaint filed and is thus time-barred.  Accordingly, this portion of Relator's proposed amendment is denied.  The proposed amendments clarifying Relator's claim of a lack of nurses'

assessments stand on a different footing, because that claim was present in prior versions of Relator's complaint.  Thus, Relator may amend her complaint only to add allegations related to the nurses' assessments claim.[3]

III.  CONCLUSION

For the foregoing reasons, Relator's motion to amend (Docket # 539) is granted in part and denied in part.

Dated:  October 13, 2021
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[3]  We do not find it necessary to address defendants' arguments that some allegations in the proposed amendments consist of allegations that have previously been dismissed.  Def. Mem. at 2.  Obviously, any prior rulings of the Court relating to claims in the complaint apply regardless of the content of any amended complaint.